IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANCON INSURANCE COMPANY     )
(U.K.) LIMITED,                     )
                                 )
              Plaintiff,      )
                                 )
v.                              )     Case No. 06-2106-CM
                                 )
GE REINSURANCE CORPORATION,  )
                                 )
             Defendant.     )

**<u>MEMORANDUM AND ORDER</u>**

I.  Introduction

This case, the material facts of which are uncontroverted, involves the interpretation and application of a so-called adverse selection clause within the tripartite arbitration provisions of a commercial reinsurance agreement. The plaintiff, Ancon Insurance Company (U.K.) Limited ("Ancon"), seeks an order compelling arbitration against the defendant, GE Reinsurance Corporation ("GE Re"), confirming the appointment of John F. Chaplin as Ancon's arbitrator, and declaring void GE Re's purported appointment of Robert J. Federman as Ancon's arbitrator. GE Re also seeks an order compelling arbitration, but asks the court to confirm the appointment of Mr. Federman and to declare void the purported appointment of Mr. Chaplin.

The parties have filed cross-motions for summary judgment (**docs. 13 & 15**).[1]  These motions have been fully briefed (*see* docs. 12, 14, 16, 18, 19, 20, & 21).  The court is now ready to rule.

## II.   Facts [2]

During various periods between 1982 and 1985, Ancon subscribed to certain reinsurance contracts (or treaties) with GE Re.  Reinsurance is an arrangement under which one insurer (known as the reinsured or the cedent) transfers all or a portion of the risk it assumed, under a policy (or policies) of insurance, to another insurer or group of insurers (known as the reinsurers).  Pursuant to their agreement,[3] GE Re was the reinsured (or "reassured" in London-market parlance) and Ancon was a reinsurer.

The parties' reinsurance agreement contains what is commonly known as a tripartite arbitration provision.  Specifically, it provides:

> In the event of any arbitration between the Reassured and its reinsured under the terms of the underlying policies or

---

[1] On August 16, 2006, by consent of the parties, and with the approval of the presiding U.S. District Judge, Hon. Carlos Murguia, these motions were assigned to the undersigned U.S. Magistrate Judge, James P. O'Hara (*see* docs. 10, 11, & 17).

[2] The parties have filed a joint stipulation of undisputed material facts upon which both have based their motions for summary judgment (*see* docs. 11 & 12).  The court has set forth the stipulated facts into the fact section of this memorandum and order.  Immaterial facts and those not properly supported by the record have been omitted here.  When necessary, additional facts are included in the analysis section of this memorandum and order.

[3] The parties have stipulated that doc. 12, exhibit 1, is a true and correct copy of the treaty between them.

contracts, the Reinsurers agree unreservedly to abide by the result of such arbitration.

As a precedent to any right of action hereunder, if any dispute shall arise between the Reassured and the Reinsurers with reference to the interpretation of this Agreement or their rights with respect to any transaction involved; whether such dispute arises before or after termination of this Agreement, such dispute, upon the written request of either party, shall be submitted to three arbitrators, one to be chosen by each party, and the third by the two so chosen.  If either party refuses or neglects to appoint an arbitrator within thirty days after the receipt of written notice from the other party requesting it to do so, the requesting party may appoint two arbitrators.  If the two arbitrators fail to agree in the selection of a third arbitrator within thirty days of their appointment, each of them shall name two, of whom the other shall decline one and the decision shall be made by drawing lots.  All arbitrators shall be executive officers of insurance or reinsurance companies or Reinsurers at Lloyd's London not under the control of either party to this Agreement.

The arbitrators shall interpret this Agreement as an honorable engagement and not merely as a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law, and they shall make their award with a view to effecting the general purpose of this Agreement in a reasonable manner rather than in accordance with a literal interpretation of the language.  Each party shall submit its case to its arbitrator within thirty days of the appointment of the third arbitrator.

The decision in writing of any two arbitrators, when filed with the parties hereto, shall be final and binding on both parties.  Judgment may be entered upon the final decision of the arbitrators in any court having jurisdiction.  The expense of the arbitrators and of the arbitration shall be equally divided between the two parties.  Said arbitration shall take place in the city in which the Reassured's Head Office is located unless

some other place is mutually agreed upon by the Reassured and the Reinsurers.[4]

On February 2, 2006, GE Re demanded arbitration with Ancon regarding a claim for coverage under the parties' reinsurance agreement.[5]  GE Re addressed its demand to Cavell Management Services Limited ("Cavell"), which Ancon had engaged in late 2003 to handle certain aspects of the run-off of Ancon's United Kingdom business.  This business includes the agreement between GE Re and Ancon.[6]

Back in approximately mid-2005, GE Re representatives had begun communicating with Cavell concerning amounts GE Re claimed were owed by Ancon under the agreement.  Communications between GE Re and Cavell continued into early 2006 without resolution of the disputed amounts owed.

Cavell received GE Re's arbitration demand on February 6, 2006.  William Craber, Cavell's Commutation Manager, first reviewed the demand on February 7, 2006.  Cavell waited until February 13, 2006 to date-stamp the arbitration demand "Received 13 FEB 2006."  On February 17, 2006, Cavell notified Ancon that Cavell had received the arbitration demand.

---

[4] Doc. 12, exhibit 1, pp. 19-20.

[5] The parties have stipulated that doc. 12, exhibit 2, is a true and correct copy of GE Re's arbitration demand.  That demand was incorrectly dated February 2, 2005, but was actually sent on February 2, 2006.  *See* docs. 22 & 23.

[6] The parties dispute whether Cavell had authority to accept GE Re's demand for arbitration as Ancon's purported agent.  However, for the limited purpose of the parties' cross-motions for summary judgment, they have stipulated that Cavell was Ancon's authorized agent for the purpose of receiving GE Re's arbitration demand.  *See* doc. 11.

On February 23, 2006, Ancon's counsel advised GE Re's counsel via email that Ancon had received the arbitration demand on February 13, 2006 and that Ancon would appoint its arbitrator by March 15, 2006. Ancon's counsel, of course, was incorrect about the receipt date of the arbitration demand, i.e., as earlier indicated, the demand was received by Cavell on February 6, 2006.

It is uncontroverted that a Cavell employee had mistakenly stamped the arbitration demand with a February 13, 2006 receipt date rather than a February 6, 2006 receipt date. It is also uncontroverted that Cavell had mistakenly advised Ancon's counsel that the arbitration demand was received on February 13, 2006.

GE Re's counsel received the above-described February 23, 2006 email from Ancon's counsel, but did not respond to it. Instead, GE Re's counsel forwarded the email to GE Re that same day.

On March 6, 2006, in response to a request from GE Re regarding its receipt of GE Re's arbitration demand, Cavell advised GE Re via email that it had received GE Re's arbitration demand on February 7, 2006. GE Re forwarded a copy of that email to GE Re's counsel on March 9, 2006.

On March 13, 2006, Ancon's counsel electronically transmitted a letter to GE Re's counsel stating Ancon had appointed John F. Chaplin as its arbitrator. At that time, Ancon and its counsel were unaware of Cavell's March 6, 2006 email to GE Re. After receiving the letter from Ancon's counsel, on March 13, 2006, GE Re's counsel confirmed through Federal Express that Cavell had received the arbitration demand on February 7, 2006.

The parties agree if Cavell had authority to accept GE Re's demand for arbitration, which they have stipulated is the case for the purpose of this motion, then Ancon's designation of its party-appointed arbitrator technically was due on March 8, 2006 pursuant to the parties' agreement.  It is uncontroverted that GE Re never expressly agreed Ancon could appoint its arbitrator after March 8, 2006.

After receiving Ancon's March 13, 2006 letter designating Mr. Chaplin as its party-appointed arbitrator, and after receiving confirmation from Federal Express that Cavell had received GE Re's arbitration demand on February 6, 2006, GE Re's counsel electronically transmitted a letter dated March 13, 2006 to Ancon's counsel advising it was GE Re's position that Ancon's appointment of Mr. Chaplin was untimely and GE Re had therefore appointed Robert J. Federman as Ancon's arbitrator.

On March 22, 2006, Ancon sued GE Re in this court.  As earlier indicated, Ancon seeks an order compelling arbitration against GE Re, confirming the appointment of Mr. Chaplin as Ancon's party-appointed arbitrator, and declaring void GE Re's purported appointment of Mr. Federman as Ancon's party-appointed arbitrator.  On April 6, 2006, GE Re filed a counterclaim also seeking an order compelling arbitration, but asking the court to confirm the appointment of Mr. Federman and declare void the purported appointment of Mr. Chaplin.

III.   Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates there is "no genuine issue as to any material fact" and it is "entitled to a judgment as a matter of law."[7] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[8] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[9] An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[10]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[11]  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[12]

---

[7] Fed. R. Civ. P. 56(c).

[8] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[9] *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[10] *Id.* (citing *Anderson*, 477 U.S. at 248).

[11] *Id.* at 670-71.

[12] *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[13]   The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[14]   Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[15]   "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[16]   Finally, the court notes summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[17]

## IV.   Analysis

The parties' cross-motions for summary judgment, based on stipulated facts, present two basic issues:  (1) whether GE Re was entitled to designate Ancon's party-appointed arbitrator; and (2) whether GE Re has waived, and/or is equitably estopped to assert, that Ancon's appointment of Mr. Chaplin as its party-appointed arbitrator was not timely.[18]

--------------------

[13] *Anderson*, 477 U.S. at 256; *see Adler*, 144 F.3d at 671 n.1 (concerning shifting burdens on summary judgment).

[14] *Anderson*, 477 U.S. at 256.

[15] *Adler*, 144 F.3d at 671.

[16] *Id.*

[17] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[18] *See* doc. 11.

Ancon argues the court should confirm its appointment of Mr. Chaplin, regardless of the fact Ancon missed its deadline to appoint an arbitrator by five days. Ancon reasons that the overriding purpose of the parties' agreement is to have a fair and balanced arbitration panel to decide their substantive contract disputes. Ancon asserts the adverse selection clause is subservient to the parties' goal of having a balanced arbitration panel, especially because the parties did not expressly make time of the essence in their agreement. Ancon cites several out of district cases in support of its proposition.[19]

GE Re argues that the adverse selection clause should be strictly enforced to further the Federal Arbitration Act's ("FAA") policy regarding arbitration agreements between sophisticated partes and the fundamental principles of Kansas contract law. Specifically, GE Re asserts that Ancon relies on cases which reflect an antiquated and improper judicial hostility toward arbitration agreements. According to GE Re, this hostility is contrary to the purpose of the FAA, which is to give the same effect to the terms of arbitration agreements as to the terms of other contracts. GE Re cites several out of district cases in support of its position.[20]

---

[19] *See In re Utility Oil Corp.*, 10 F. Supp. 678 (S.D.N.Y. 1934); *Lobo & Co. v. Plymouth Navigation Co. of Monrovia*, 187 F. Supp. 859 (S.D.N.Y. 1960); *Compania Portorafti Commerciale, S.A. v. Kaiser Int'l Corp.*, 616 F. Supp. 236 (S.D.N.Y. 1985); *New England Reins. Corp. v. Tennessee Ins. Co.*, 780 S. Supp. 73 (D. Mass. 1991); *Texas E. Transmission Corp. v. Barnard*, 285 F.2d 536 (6th Cir. 1960).

[20] *See Universal Reins. Corp. v. Allstate Ins. Co.*, 16 F.3d 125 (7th Cir. 1993); *Evanston Ins. Co. v. Gerling Global Reins. Corp.*, No. 90-3919, 1990 WL 141442 (N.D. Ill. Sept. 24, 1990); *Employers Ins. of Wausau v. Jackson*, 527 N.W.2d 681 (Wis. 1995); *Nat'l Planning v. Achatz*, No. 02-0196, 2002 WL 31906336 (W.D.N.Y. 2002).

The court notes that neither party has included a choice-of-law analysis in their papers.  The parties' reinsurance agreement provides that, upon the failure of a subscribing reinsurer to pay any amount claimed to be due under the agreement, that reinsurer will, at the request of the reassured, submit to the jurisdiction of any court of competent jurisdiction in the United States, and the agreement further provides the law and practice of such court will apply.[21]  The court finds by filing suit in the District of Kansas and cross-motions for summary judgment without analysis of the issue, the parties have agreed to the application of Kansas state and federal law to this dispute.  As set forth below, this conclusion is largely academic because there is no law directly on point from any Kansas appellate court, this court, or the Tenth Circuit Court of Appeals.

All of the cases cited by the parties involve factual situations similar to the case at bar, i.e., one party attempting to appoint its arbitrator after the deadline set forth in the adverse selection clause of the parties' arbitration agreement.[22]  As explained more fully below, the

---

[21]   Doc. 12, exhibit 1, p. 12.

[22]   *Utility Oil*, 10 F. Supp. at 680 (arbitrator appointed three days after court determination that dispute was arbitrable, but outside the deadline to appoint within twenty-one days of receiving the arbitration demand set forth in parties' agreement); *Lobo*, 187 F. Supp. at 860 (one day delay in appointing arbitrator when parties' agreement required appointment within twenty days of arbitration demand); *Compania*, 616 F. Supp. at 238 (four day delay in appointing arbitrator when parties' agreement required appointment within twenty days of arbitration demand); *New England*, 780 F. Supp. at 77 (eight day delay in appointing arbitrator when parties' agreement required appointment within thirty days of arbitration demand); *Texas Eastern*, 285 F.2d at 537 (arbitrator appointed outside the thirty day deadline); *Universal Reinsurance*, 16 F.3d at 127 (three day delay in appointing arbitrator when parties' agreement required appointment within thirty days of arbitration demand); *Evanston*, 1990 WL 141442, at *1 (one day delay in appointing arbitrator when parties' agreement required appointment within one month of arbitration demand);

court finds the rationale articulated in the cases relied upon by Ancon more persuasive than the rationale of the cases relied upon by GE Re.

The line of cases cited by Ancon adopts the rationale first set forth in *In re Utility Oil*. In that case, the United States District Court for the Southern District New York refused to strictly enforce the parties' adverse selection clause when one party failed to name its arbitrator within the twenty-one day deadline.  There, the delay was due to the parties' disagreement as to whether the dispute was arbitrable.  The court stated:

> [t]he United States Arbitration Act . . . had for its purpose the extension of the remedy of specific performance to agreements for arbitration. . . . And it is a familiar rule in suits for specific performance that equity does not treat a stipulation in respect of time as being of the essence of the contract unless the parties have very plainly made it so, despite the fact that a court of law would deem the time requirement to be of the essence. . . . If the situation of the parties has not changed and a party who is strictly in default has acted in good faith and has been reasonably diligent, delay in his performance will generally not operate as a forfeiture.
>
> . . .
>
> [w]ith all the arbitrators representing one party only, the party unrepresented would in some cases be at the mercy of his opponent and the result a foregone conclusion.  In view of these possibilities, the fair and equitable interpretation of the agreement is that the parties intended this subordinate clause [i.e., the adverse selection clause] to operate where one party unreasonably neglected or refused to appoint its arbitrator within

_____

*Employers Insurance*, 527 N.W.2d at 685 (approximately one month delay in appointing arbitrator when parties' agreement required appointment within thirty days of arbitration demand); *Achatz*, 2002 WL 31906336, at *1 (arbitrator appointed outside the NASD deadline for appointment).

> twenty-one days, and not in all manner of cases.  If an
> appointment was made only two days late and the delay was due
> to mistakes as to dates, few would be so carping as to contend
> that the appointment was ineffective and that the arbitrator
> appointed by the other party could decide the dispute alone.
> From this fact the fair conclusion is that the time of appointment
> was not regarded as of the essence under the arbitration clause.[23]

In the instant case, Ancon's five day delay in appointing its arbitrator was due to a

simple mistake as to the date on which Cavell received GE Re's arbitration demand.  The

court agrees with Ancon that a mistake such as presented here should not be the basis for

allowing GE Re to appoint two of the three arbitrators who will decide the parties' dispute

and then to allow those two to choose the third.  As set forth in *Lobo*,

> [a]rbitration agreements are aimed at amicable determination of
> disputes with results which both parties will be wiling to accept.
> Toward this end, it is desirable that the arbitration panel consist
> of arbitrators chosen by each of the parties.  Where imbalance
> is unnecessarily effected the purpose and advantages of
> arbitration are defeated.  To this end, and so far as possible, the
> panel should be one mutually acceptable.  This determination
> should be made in advance to preclude subsequent useless and
> unnecessary litigation.  Where a delay of one day in the
> appointment of an arbitrator has occurred in the case of parties
> who are in continual communication, such a delay is an
> immaterial variation of the terms of the contract and should not
> be permitted to upset the basic and original intent of the
> arbitration plan.[24]

In declining to strictly enforce the adverse selection clause at issue in *Texas Eastern*, the

Sixth Circuit Court of Appeals similarly stated "[a]t law and in equity, the question is one

---

[23] 10 F. Supp. at 680-81 (citations omitted).

[24] 187 F. Supp. at 860-61.

of construction to be determined by the intent of the parties and time is, ordinarily, not of the essence, unless it is made so by express stipulation, or unless something in its nature, or connected with its purpose, makes it apparent the parties intended the contract to be performed within the time specified."[25]

At the other end of the spectrum from Ancon's position, is the line of cases cited by GE Re, which adopts the rationale set forth in *Universal Reinsurance*.  In that case, the Seventh Circuit Court of Appeals acknowledged the *Utility Oil* line of cases, but strictly enforced the parties' adverse selection clause when one party failed to name its arbitrator within the thirty-day deadline due to a typographical error.  The court stated:

> [i]n this case, the agreement is crystal clear, specifying a particular course for the appointment of a second arbitrator when one of the parties fails to make its selection within thirty days.  This provision does not command less deference simply because it concerns a procedural rather than a substantive aspect of the parties' decision to arbitrate.  On the contrary, the Arbitration Act states in no uncertain terms that contractual provisions for the appointment of an arbitrator *shall* be followed.
>
> . . .

---

[25] 285 F.2d at 539.  *See also, Compania*, 616 F. Supp. at 238 (citing *Texas Eastern*, *Lobo*, and *Utility Oil*) ("There is substantial authority for the proposition that so minor a delay, uncomplicated by indications of bad faith, does not in equity deprive a party to an arbitration clause of its contracted-for right to appoint an arbitrator of its choosing. . . . The simple recitation of the time within which the appointment must be made is not sufficient. . . to [make time of the essence]."); *New England*, 780 F. Supp. at 76-78 (declining to follow cases that strictly enforced timeliness requirements in arbitration clauses, especially considering lack of prejudice to the other party).

> [w]e concede that strict enforcement of this provision may sap
> Universal's faith in the impartiality of the panel.  Nonetheless,
> . . . we think it inaccurate to suggest that '[n]o one in his right
> mind would agree to have a matter decided by umpires selected
> entirely by one's adversary.'  That is *exactly* what Universal
> agreed to when it signed off on the language permitting Allstate
> to select a second arbitrator if Universal failed to do so within
> thirty days. . . . Universal . . . is, like Allstate, a sophisticated
> party well versed in the language and ramifications of arbitration
> agreements.[26]

Upon review of the parties' arguments and the factual record in this case, the court

finds as a matter of law that the line of precedents cited by Ancon is much better reasoned

and thus ultimately far more persuasive.  The court believes following the approach

suggested by GE Re would be decidedly ill-advised, at least under the facts presented here.

Most troublesome is the implicit suggestion, at least were the court to rigidly follow the line

of precedents cited by GE Re, that if instead of being five days late, Ancon had been late by

just one hour – indeed, by just one minute – Ancon would effectively forfeit to Ge Re the

bargained-for right to name one of the three arbitrators.  Ancon and GE Re, both extremely

sophisticated commercial companies with unfettered access to first-rate legal counsel,

presumably made a conscious decision not to expressly make time of the essence in the

---

[26] 16 F.3d at 129 (emphasis in original) (citations omitted).  *See also Evanston*, 1990
WL 141442, at *2 ("[T]he language of the arbitration clause itself makes the timing of
qualification [of an arbitrator] consequential regardless of the absence of a 'time is of the
essence' clause."); *Employers Insurance*, 527 N.W.2d at 620 (relying upon *Universal
Reinsurance* and *Evanston* in strictly enforcing the adverse selection clause); *Achatz*, 2002
WL 31906336, at *2 (declining to follow the *Utility Oil* cases and relying upon *Universal
Reinsurance* to strictly enforce the parties' agreement to designate arbitrators within the time
required by the NASD rules).

arbitration portion of their reinsurance agreement; if this one limited issue really was so important, GE Re easily could have accomplished that result by making its requirements clear in the contract.

Significantly, Ancon's *very* short delay in appointing its arbitrator was not due to bad faith.  Instead, it was attributable to a simple mistake by Ancon's agent, Cavell.  Although the parties' agreement technically provides that GE Re may appoint an arbitrator if Ancon neglects to do so within thirty days of receipt of the arbitration demand, the court finds a strict, hypertechnical enforcement of this provision under the facts presented here would almost certainly lead to an arbitration judgment in which Ancon is likely to have zero confidence.

Further, the court in wholly unpersuaded that GE Re will suffer *any* prejudice by the court's ruling.  That is, it is difficult to see how GE Re gets less than what it bargained for by having to proceed, as the basic premise of the agreement undoubtedly contemplates, to a tripartite arbitration panel consisting of GE Re's appointed arbitrator, Ancon's appointed arbitrator, and a third arbitrator chosen by the first two.

And most importantly, the court strongly believes the parties' agreement should be interpreted and enforced with its dominant purpose in mind, which of course is to secure resolution of the parties' disputes by an *impartial* arbitration panel such that *both* parties have

confidence in the outcome.  Thus, the court confirms Ancon's appointment of Mr. Chaplin as its party-appointed arbitrator and declares void GE Re's appointment of Mr. Federman.[27]

As mentioned earlier, Ancon also has argued that GE Re has waived, and/or is equitably estopped to assert, Ancon's appointment of Mr. Chaplin as its party-appointed arbitrator was not timely.  But this argument obviously is moot in light of its above-stated ruling.

## V.  Order

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1.      Ancon's motion for summary judgment (**doc. 13**) is granted.

2.      GE Re's motion for summary judgment (**doc. 15**) is denied.

3.      Both Ancon and GE Re are compelled to proceed with the arbitration.  Ancon's appointment of John F. Chaplin as Ancon's arbitrator is confirmed.  GE Re's purported appointment of Robert J. Federman as Ancon's arbitrator is declared void.  Mr. Chaplin, in consultation with GE Re's appointed arbitrator, Robert K. Burgess, shall confer and select the third member of the tripartite arbitration panel.

---

[27] Both parties cite *Hollenbeck v. Household Bank*, 829 P.2d 903 (Kan. 1992) and *Ryco Packaging Corp. of Kansas v. Chappelle Int'l, Ltd.*, 926 P.2d 669 (Kan. Ct. App. 1997), but for opposite propositions.  Ancon argues that Kansas law requires contracts to be read as a whole and that the court is to give effect to the parties' manifest intent.  GE Re argues that under Kansas law, when a contract is unambiguous, the parties' intent should be determined from the contract.  The court notes that neither of these cases involved agreements to arbitrate and finds the cases cited above better inform the discussion in the case at bar.

4.     Having reviewed the various specific forms of relief requested in Ancon's complaint (doc. 1) and GE Re's counterclaim (doc. 2), it does not appear to the undersigned magistrate judge there is much, if anything, left to do other than to enter a separate judgment as required by Fed. R. Civ. 58.  If this assessment is correct, and especially if GE Re intends to appeal the instant ruling, then counsel shall promptly confer and submit a joint notification to Judge Murguia's chambers, so that his courtroom deputy clerk may proceed to file the judgment.  If the undersigned's assessment in this regard is inaccurate, then counsel shall confer with respect to discovery and case management and submit, pursuant to Fed. R. Civ. P. 26(f), an updated case management planning meeting report no later than **May 16, 2007**; this report shall be submitted electronically in .pdf format as an attachment to an Internet e-mail sent to the undersigned's chambers (*ksd_ohara_chambers@ksd.uscourts.gov)*, and shall not be filed with the Clerk's Office.

Dated this 30th day of March, 2007, at Kansas City, Kansas.


  s/ James P. O'Hara                             
James P. O'Hara
U.S. Magistrate Judge